UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUANE SCOTT JOACHIM,<br><br>   Petitioner,<br><br> v.<br><br>S. HATTON,<br><br>   Respondent. | Case No. 16-cv-00895-HSG<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY** |

Before the Court is the above-titled *pro se* petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Duane Scott Joachim, challenging the validity of a judgment obtained against him in state court. Respondent has filed an answer to the petition, Dkt. No. 11, and Petitioner has filed a traverse, Dkt. No. 14. For the reasons set forth below, the petition is DENIED.

## I. PROCEDURAL HISTORY

On September 30, 2013, a Contra Costa County found Petitioner guilty of first-degree residential burglary and first-degree residential robbery, in violation of sections 459, 460(a), 211, 212.5(a) of the California Penal Code. Clerk's Transcript ("CT") at 76–77.[1] The trial court sentenced Petitioner to a total term of seven years, eight months in state prison. CT at 196–97.

On August 7, 2014, Petitioner filed a direct appeal with the California Court of Appeal, raising a sentencing claim. Answer, Exhs. B–D. On June 4, 2015, the California Court of Appeal remanded the matter to the trial court to impose and stay the term on the burglary conviction and

---

[1] The Clerk's Transcript has been filed as Exhibit A to the Answer. Page references to the Clerk's Transcript are to the page numbers assigned by Respondent which are in the upper right-hand corner of each page.

to correct a clerical error on the abstract of judgment, but otherwise affirmed the judgment. Answer, Exh. E.

On August 8, 2015, Petitioner filed a petition for a writ of habeas corpus with the California Court of Appeal. Answer, Ex. F. On August 13, 2015, the California Court of Appeal summarily denied the petition. Answer, Ex. F, and Dkt. No. 11-4 at 102.

On September 3, 2015, Petitioner filed a petition for a writ of habeas corpus with the California Supreme Court, raising a speedy trial claim. Answer, Ex. G. On November 24, 2015, the California Supreme Court summarily denied the petition. Answer, Ex. H.

On February 23, 2016, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his right to a speedy trial was violated with respect to his conviction in Contra Costa County Superior Court for first-degree residential burglary and first-degree residential robbery. Dkt. No. 1 ("Pet.").

## II. STATEMENT OF FACTS

The facts underlying Petitioner's first-degree residential burglary and first-degree residential robbery convictions are omitted as they are not relevant to the speedy trial claim raised in his petition.

On February 17, 2011, the Contra Costa County District Attorney filed a complaint charging Petitioner with first-degree residential burglary and first-degree residential robbery. Pet. at 5.[2] That same day, Petitioner appeared for an arraignment on this complaint and pled not guilty. *Id.* at 6. On March 11, 2011, a preliminary hearing was held. *Id.* On March 22, 2011, an amended felony complaint was filed, and Petitioner again pled not guilty. *Id.* On April 7, 2011, Petitioner posted bail. *Id.*

On June 3, 2011, while Petitioner was out on bail from Contra Costa County, Petitioner was arrested in Napa County, where he was charged with receiving stolen property. Pet. at 6. On April 19, 2012, Petitioner was convicted of the charge and sentenced to four years in Napa County Jail. *Id.*; CT at 246.

---

[2] Page references to the petition are to the page numbers assigned by the Court's electronic filing system.

2

On April 24, 2012, Petitioner filed a demand for a speedy trial with the Contra Costa County District Attorney. Pet. at 6 and 20.

On May 11, 2012, the Sonoma County District Attorney filed a complaint charging Petitioner with residential burglary. Dkt. No. 11-5 at 7–9. On May 21, 2012, Petitioner was transferred from the custody of Napa County to Sonoma County pursuant to a removal order issued by the Sonoma County Superior Court. Pet. at 8; CT at 183; Dkt. No. 11-5 at 10–11. Pre-trial proceedings in the Sonoma County case were held in early June 2012. CT at 183–84; Dkt. No. 11-5 at 12–15. On June 5, 2012, Petitioner filed a motion to continue his trial in Sonoma County Superior Court. Dkt. No. 11-5 at 46–47. Petitioner pled not guilty in the Sonoma County case; bail was set in the Sonoma County case; and a preliminary examination was set for July 24, 2012 for the Sonoma County case. CT at 183–84; Dkt. No. 11-5 at 12–15.

On July 9, 2012, Petitioner appeared in Contra Costa County Superior Court on the charges underlying this petition. Pet. at 6. Trial was set for August 20, 2012, and time was not waived. *Id.* Because he was being held in Contra Costa County for these proceedings, Petitioner missed his July 19, 2012 readiness conference in his Sonoma County case. *Id.*

On July 19, 2012, Sonoma County Superior Court was informed that Petitioner was in custody in Contra Costa County, not Napa County. CT at 184; Dkt. No. 11-5 at 15. Contra Costa County released Petitioner to Sonoma County in time for his July 24, 2012 preliminary examination. Pet. at 6; Dkt. No. 11-5 at 15. Because Petitioner was in the custody of Sonoma County, Petitioner then missed his August 8, 2012 readiness conference in Contra Costa County. Pet. at 6 and 9. Over the next several months, Petitioner waived time and requested an extension of time in his Sonoma County case. Dkt. No. 11-5 at 48–62.

On March 21, 2013, Petitioner pled guilty to second-degree residential burglary in Sonoma County Superior Court, and was sentenced to four years. Pet. at 6 and Dkt. No. 11-5 at 63–65.

On May 6, 2013, Petitioner was returned to Contra Costa County, and he appeared in Contra Costa County Superior Court with respect to the underlying charges. Pet. at 7. Petitioner set a time-not-waived trial date for June 3, 2013. *Id.*

3

On June 13, 2013, Petitioner moved to dismiss the Contra Costa County charges, alleging a violation of his right to a speedy trial pursuant to section 1381 of the California Penal Code. Pet. at 7 and 15–22. The state trial court granted the motion and allowed the prosecution to refile the charges pursuant to section 1387 of the California Penal Code. Pet. at 7 and CT 39–41. Trial was set for August 2013, and trailed to August 28, 2013. Pet. at 7. The jury found Petitioner guilty of first-degree residential burglary, first-degree residential robbery, and one prior prison enhancement. Pet. at 7 and CT at 76–77. Petitioner was sentenced to seven years and eight months in jail. Pet. at 7; and CT 76–77, 194–95.

### III. DISCUSSION

#### A. Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions

4

as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). But where, as here, a state court's decision is unaccompanied by an explanation, the habeas petitioner must still show that there was no reasonable basis for the state court to deny relief. *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) ("Section 2254(d) applies even where there has been a summary denial"). "'[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.'" *Id.* at 188 (quoting *Harrington*, 562 U.S. at 102). As such, "when the state court does not supply reasoning for its decision," the federal court must conduct an "independent review of the record and ascertain whether the state court's decision was objectively unreasonable." *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (internal quotation marks and citation omitted); *see also Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). "Crucially, this is not a *de novo* review of the constitutional question. Rather, even a strong case for relief does

5

not mean the state court's contrary conclusion was unreasonable." *Walker*, 709 F.3d at 939 (internal quotation marks and citations omitted).

**B.  Discussion**

    **1.  Standard**

A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment to the Constitution and imposed by the Due Process Clause of the Fourteenth Amendment on the states. *Klopfer v. North Carolina*, 386 U.S. 213, 222–23 (1967). The right attaches at arrest or indictment, not before, and lasts through conviction. *Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016). It detaches upon conviction. *Id.* No *per se* rule has been devised to determine whether the right to a speedy trial has been violated. Instead, courts must apply a flexible balancing test, in which the conduct of both the prosecution and the defendant are weighed. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). In evaluating a Sixth Amendment speedy trial claim, courts should consider and weigh the following factors: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Doggett v. United States*, 505 U.S. 647, 651 (1992). None of the four factors are either a necessary or sufficient condition for finding a speedy trial deprivation. *Barker*, 407 U.S. at 533. They are related factors and must be considered together with such other circumstances as may be relevant. *Id.*

The length of delay serves as a "triggering mechanism." *Barker*, 407 U.S. at 530. If the delay is not presumptively prejudicial, then there is no reason to consider the other balancing factors. *Id.* Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.[3] *Id.* at 530–31. The Ninth Circuit considers the second factor, i.e., the reason for the delay, the "focal inquiry." *See United States v. Alexander*, 817 F.3d 1178, 1182 (9th Cir. 2016) (per curiam) ("If government can show that delay was wholly justifiable because it proceeded with

---

[3] To the extent that Petitioner is arguing that the delay was prejudicial because the delay violated California's speedy trial provision, this argument does not give rise to a cognizable claim in federal habeas proceedings. Federal habeas corpus is not available for attacks on violations of state law or procedure. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted).

6

reasonable diligence, the defendant's speedy trial claim generally cannot succeed in the absence of a showing of actual prejudice resulting from the delay."). The court must consider "whether the government or the criminal defendant is more to blame" for the delay. *Doggett*, 505 U.S. at 651. Whether a defendant must show actual prejudice depends on whether it is he or the government who is responsible for the delay. *United States v. Lam*, 251 F.3d. 852, 859 (9th Cir.), *amended*, 262 F.3d 1033 (9th Cir. 2001). No showing of prejudice is required when the delay is great and attributable to the government, but when the government has been negligent and the delay does not much exceed the minimum time required to trigger the full *Barker* inquiry, the court must consider the amount of delay in relation to particularized prejudice. *United States v. Gregory*, 322 F.3d 1157, 1162–63 (9th Cir. 2003). If the defendant is responsible for the delay, he carries a heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim. *Lam*, 251 F.3d at 859. Actual prejudice can be shown in three ways: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the accused's defense will be impaired. *Gregory*, 322 F.3d at 1163. The final factor is to be given the most weight in the analysis, and a clear example of an impaired defense is the death or disappearance of a witness during the delay. *Barker*, 407 U.S. at 532.

**2. Analysis**

**a. Reason for Delay**

Respondent argues that the delay was largely attributable to Petitioner's own acts, in that Petitioner committed offenses in Napa County while he was out on bail and awaiting trial on the Contra Costa County charges, which resulted in Petitioner undergoing court proceedings in Napa County that delayed his Contra County trial date. Dkt. No. 11-1 at 11. Respondent also argues that the delay was reasonable in that it was also attributable to delays in transporting Petitioner between Sonoma, Napa, and Contra Costa counties to attend criminal proceedings in each of these jurisdictions. *Id.* Respondent argues that once Petitioner was sentenced in Sonoma County, Petitioner's Contra Costa County case "proceeded in a timely and expeditious manner," in that a preliminary hearing was conducted on June 13, 2013, and trial commenced on August 28, 2013. *Id.*

1　　　　Petitioner responds that he did not cause the delay because he sought speedy resolutions of

2　all three of his cases, in that he filed motions for speedy trials in both his Napa County case and

3　the underlying case, and he pled guilty in his Sonoma County case. In addition, he argues that the

4　prosecution caused the delay, either deliberately with the purpose of hampering his defense by

5　placing Petitioner "under a cloud of an unliquidated criminal charge, in two different trial courts,

6　in two different counties, simultaneously, for an indeterminate period, [in violation of the]

7　'fundamental fairness' assured by the Due Process Clause of the Fourteenth Amendment," and to

8　gain a tactical advantage over Petitioner, Pet. at 8–9, or by negligently failing to ensure that Contra

9　Costa County retained custody of Petitioner. Pet. at 8–9 and Dkt. No. 14-1 at 19.

10　　　　The Court finds that Respondent has failed to meet its burden of explaining the delay in

11　bringing Petitioner to trial. *McNeely v. Blanas*, 336 F.3d 822, 827 (9th Cir. 2003) ("The

12　prosecution bears the burden of explaining delay in bringing an accused to trial."). The Court

13　finds unpersuasive Respondent's argument that the delay is attributable to Petitioner. Even if

14　Petitioner's arrests and related court proceedings in Napa County and Sonoma County can be

15　considered an act that caused delay, Respondent has failed to explain how these unrelated

16　proceedings caused the two-year and seven-month time between indictment and trial. Petitioner

17　was not arrested by Napa County until June 3, 2011, four months after he was initially indicted in

18　the underlying case on February 7, 2011, and two months after an amended felony complaint was

19　filed on March 11, 2011. Respondent fails to explain why the prosecution failed to bring the case

20　to trial between March 11, 2011 and June 3, 2011. Similarly, Petitioner was in the custody of

21　Napa County for over ten months awaiting trial on the Napa County charges (June 3, 2011 – April

22　19, 2012), yet during that time the prosecution made no efforts to schedule the trial on the

23　underlying charges, or to seek an order of removal to transfer Petitioner back to Contra Costa

24　County. The record indicates that the prosecution had the ability to transfer Petitioner back to

25　Contra Costa County even while Petitioner was in the custody of another county facing trial on

26　other charges. In or around July 2012, Petitioner was facing charges in Sonoma County, but

27　Contra Costa County successfully removed him from Sonoma County to Contra Costa County to

28　set a trial date in the underlying case. Pet. at 6.

8

However, the Court also finds unpersuasive Petitioner's conclusory allegation that the prosecution deliberately delayed his trial to hinder his defense. Petitioner claims that the delay hindered his defense because it placed him "under a cloud of an unliquidated criminal charge, in two different trial courts, in two different counties, simultaneously, for an indeterminate period, [in violation of the] 'fundamental fairness' assured by the Due Process Clause of the Fourteenth Amendment." Pet. at 8–9. But, contrary to Petitioner's argument, the delay in trying Petitioner on the underlying charges resulted instead in Petitioner standing trial on the underlying charges with no "unliquidated" charges in other courts. At the time Petitioner filed his speedy trial demand in the underlying case (April 24, 2012), he was also facing charges in Napa County and, three weeks later, would be facing charges in Sonoma County. Because of the delay, by the time Petitioner went to trial on the underlying charges, his cases in Sonoma County and Napa County had already been resolved.[4] Moreover, Petitioner does not specify how being charged in multiple jurisdictions negatively affected his ability to defend in the underlying case.

Nothing in the record supports an inference that the prosecution deliberately caused the delay. On the record presented, the prosecution's failure to prosecute the case between March 22, 2011 (filing of the amended complaint) and May 6, 2013 (Petitioner returned to custody of Contra Costa County after plea bargain entered in Napa County case and conviction secured in Sonoma County case) was, at most, negligent, which would weigh somewhat in Petitioner's favor, though not as heavily as would a deliberate delay. *See Barker*, 407 U.S. at 531 (government's negligence weighs less heavily in defendant's favor than deliberate delay, but "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant").

*Barker*'s third factor — assertion of the right to a speedy trial — weighs in favor of Petitioner. The record indicates that Petitioner filed a demand for a speedy trial on April 24, 2012. However, this factor only weighs slightly in Petitioner's favor. *See United States v. Turner*, 926

---

[4] To the extent that Petitioner is arguing that the prosecutors in Napa County, Sonoma County, and/or Contra Costa County were colluding to delay his Contra Costa County trial for the purpose of hindering his defense in all or some of the three cases, Petitioner offers no evidentiary support for this assertion.

9

1   F.2d 883, 889 (9th Cir. 1991) ("the mere fact of proper, timely assertion [of speedy trial rights]
2   does not warrant dismissal").

3   The fourth and final *Barker* factor — prejudice — does not weigh in favor of Petitioner.
4   Here, the 30-month delay between when Petitioner was indicted (February 2011) and when he
5   went to trial (August 28, 2013) is sufficient to trigger a *Barker* inquiry because the delay was
6   greater than the one-year time period which courts generally recognize as presumptively
7   prejudicial. *Doggett*, 505 U.S. at 652, n.1 (stating that lower courts have generally attached a
8   presumption of prejudice, sufficient to trigger a *Barker* inquiry, when the delay "approaches one
9   year"). As discussed above, the record possibly supports an inference that the delay was caused
10  by the government's negligence. Accordingly, the Court considers the amount of delay in relation
11  to particularized prejudice. *Gregory*, 322 F.3d at 1162-63. In considering prejudice to the
12  defendant, the court must look to three specific interests that the right to a speedy trial is meant to
13  protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the
14  accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532.
15  The final factor is to be given the most weight in the analysis, and a clear example of an impaired
16  defense is the death or disappearance of a witness during the delay. *Id.*

17  Here, Petitioner was not subjected to oppressive pretrial incarceration due to the delay.
18  Petitioner posted bail in the underlying case on April 7, 2011. His later incarceration prior to his
19  trial in the underlying case was due to the criminal charges he was facing in Napa County and
20  Sonoma County.

21  Petitioner alleges that he suffered anxiety and concern regarding the outstanding charges,
22  Dkt. No. 14-1 at 13, reflecting some prejudice.

23  However, with respect to the final factor, which is given the most weight, Petitioner has
24  not demonstrated that his defense was impaired. *Barker*, 407 U.S. at 532 (focusing on inability of
25  defendant to adequately prepare case). Petitioner argues that he was prejudiced in the following
26  ways: (1) Petitioner was placed "under a cloud of an unliquidated criminal charge; in two
27  different trial courts; in two different counties, simultaneously, for an indeterminate period,
28  violates the requirement of 'fundamental fairness' assured by the Due Process Clause of the

10

Fourteenth Amendment, Dkt. No. 1 at 8; (2) Petitioner was forced to simultaneously defend himself in trials in two separate counties, Dkt. No. 14-1 at 13; (3) because he was sentenced last in Contra Costa County, Petitioner received a consecutive sentence whereas he would have received a concurrent sentence if he had been sentenced last in Sonoma County, Dkt. No. 14-1 at 13; (4) Petitioner was prejudiced when the trial court allowed the prosecution to refile the charge in 2013, Dkt. No. 1 at 9; (5) the delay was intended to "promote the prosecution on the Contra Costa County charge," Dkt. No. 1 at 8; (6) Petitioner was unable to adequately prepare his case, Dkt. No. 14-1 at 13; and (7) Petitioner missed his August 8, 2012 readiness conference in Contra Costa County, Dkt. No. 14-1 at 13–14.

The majority of Petitioner's arguments misunderstand the fourth *Barker* factor. In assessing prejudice to the defendant, the fourth *Barker* factor weighs in favor of the defendant only where the delay impaired the defendant's ability to defend himself at trial, *Barker*, 407 U.S. at 532, and not where the defendant alleges other negative impact from the delay. Petitioner's allegations that he labored under the cloud of an unliquidated charge, and that he was forced to defend himself simultaneously in trials in two separate counties do not, by themselves, establish that his defense was impaired. Moreover, since Petitioner was arrested in Napa County on June 3, 2011, five months after the complaint was filed in Contra Costa County on February 17, 2011, Petitioner still would have labored under the cloud of an unliquidated charge and still would have had to defend simultaneously in trials in two separate counties even if Petitioner's underlying trial had been held within a year of the indictment, the time period that generally triggers a *Barker* inquiry. *Doggett*, 505 U.S. at 652 n.1.

Similarly, Petitioner's arguments regarding his sentence and the 2013 re-filing of the Contra Costa County charge are immaterial to whether his defense was impaired. In addition, Petitioner's argument regarding this sentence does not implicate the right to a speedy trial because the right to a speedy trial detaches upon conviction and prior to sentencing. *Betterman*, 136 S. Ct. at 1611. Also, California law allows the prosecution to dismiss and re-file charges in order to satisfying California's statutory speedy trial provisions. *See Crockett v. Sup. Ct.*, 535 P.2d 321, 324 (Cal. 1975) (charges dismissed for violation of statutory speedy trial limits may be refiled as

11

1 long as there is no actual prejudice).

With respect to Petitioner's final three arguments, Petitioner fails to point to anything in the record that supports these arguments. It is unclear how the delay benefited the Contra Costa County prosecution. Petitioner fails to identify how he was unable to adequately prepare his case. Finally, there is no indication that missing his August 8, 2012 readiness conference impaired his defense in any way. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also United States v. Alexander*, 817 F.3d 1178, 1183 (9th Cir. 2016) (petitioner failed to show particularized prejudice where he was not incarcerated for any portion of overall delay of nearly five years, did not show any uncertainty or anxiety resulting from delay, and did not provide any non-speculative proof as to how his defense was prejudiced by delay).

The Court has carefully considered and balanced the *Barker* factors, and finds that Petitioner's right to a speedy trial was not violated. Accordingly, the state court's rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Barker*, 407 U.S. at 533–36 (delay of over five years did not violate speedy trial right because fact that no witnesses died or were otherwise unavailable by time of trial outweighed minimal prejudice arising from 10–month jail time, four years of living under a "cloud of suspicion and anxiety," and two minor witness memory lapses, even where delay was attributable to prosecutor). Habeas relief is denied on this claim.

## C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: 11/2/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge